UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81793-CV-MARRA/MATTHEWMAN

SCOTT MEYROWITZ, MARY
MEYROWITZ, AND SSB INTERNATIONAL,
LLC, a Florida limited liability company,

       Plaintiffs,

v.

GREG BRENDEL, an individual, and
WELLS FARGO BANK, N.A., a
foreign corporation,

       Defendants.

_____/

FILED by ___ D.C.

APR 0 9 2018

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GREG BRENDEL'S MOTION FOR SANCTIONS AND REQUEST FOR HEARING [DE 71]

**THIS CAUSE** is before the Court upon Defendant, Greg Brendel's ("Defendant")
Motion for Sanctions and Request for Hearing [DE 71]. This matter was referred to the
undersigned by United States District Judge Kenneth A. Marra. *See* DE 72. Plaintiffs, Scott
Meyrowitz, Mary Meyrowitz, and SSB International, LLC, ("Plaintiffs") have filed a Response
to the Motion [DE 73], and Defendant has filed a Reply [DE 76]. The Court held an evidentiary
hearing on the Motion on February 28, 2018. [DE 88]. At the close of the evidentiary hearing,
the Court allowed the parties additional time to file written post-hearing memoranda in lieu of
oral closing arguments. Plaintiffs filed their Post-Hearing Memorandum [DE 95] on March 12,
2018. Defendant Greg Brendel filed his Post-Hearing Memorandum [DE 96] on March 12, 2018.
This matter is now ripe for review.

1

# I.    BACKGROUND & PROCEDURAL HISTORY

## A. Background

Plaintiffs filed the Complaint in this case on July 6, 2016 in the Circuit Court in and for the Fifteenth Judicial Circuit in Palm Beach County, Florida, alleging seven causes of action against Defendants Brendel and Wells Fargo Bank: Count I—Violation of Florida Statute Section 655.059-Access to Books and Records; Count II—Violation of 15 U.S.C. § 6821-Privacy Protection for Customer Information of Financial Institutions; Count III—Negligence (against Defendant Wells Fargo only); Count IV—Intentional Interference with Business Affairs; Count V—Defamation to Reputation; Count VI—Fraud (against Defendant Brendel only); and Count VII—Intentional Misrepresentation (against Defendant Brendel only). *See* DE 1-1. The case was removed to federal court on October 26, 2016. [DE 1].

This case is related to a separate action filed by Greg Brendel in the 192nd District Court of Dallas County, Texas, in 2015, against Scott Meyrowitz, Mary Meyrowitz, and SSB International, LLC. [DE 56, pg. 2]. That Texas case was later removed to the United States District Court for the Northern District of Texas, Dallas Division. [DE 1]. Pursuant to a joint venture agreement between the parties, Scott Meyrowitz and SSB International moved to compel arbitration. [DE 1-1, pg. 8]. United States District Judge Sidney Fitzwater granted the motion to compel arbitration. *Id.* At the arbitration, Brendel won an arbitration award of $1,018,254.22 against Scott Meyrowitz and SSB International, LLC. [DE 56-1, pg. 3]. This award was confirmed by Judge Fitzwater on March 30, 2017. [DE 56-1, pg. 16]. Final judgment in favor of Greg Brendel in the amount of $1,018,254.22 was entered the same day against Scott Meyrowitz and SSB International, LLC. [DE 56-2]. No judgment was entered against Mary Meyrowitz in

the Texas action and that case remains pending against her. According to Defendant Brendel, the Judgment against Scott Meyrowitz and SSB International, LLC, remains wholly unsatisfied and unpaid.

### B. **Motion for Writ of Garnishment**

On July 12, 2017, Plaintiffs Scott Meyrowitz, Mary Meyrowitz, and SSB International, LLC and Defendant Wells Fargo Bank, N.A. filed a Joint Notice of Settlement in the instant case notifying the Court and all parties that they had settled the matter pending between them. [DE 55]. In light of the Joint Notice of Settlement [DE 55], Defendant Brendel filed a Petition for Writ of Garnishment on July 28, 2017, against Garnishee Lawrence A. Caplan, P.A., the law firm currently serving as counsel in this action for Plaintiffs Scott Meyrowitz, Mary Meyrowitz, and SSB International, LLC. [DE 56]. Defendant Brendel sought to garnish any monetary proceeds owed to Scott Meyrowitz and/or to SSB International, LLC, in order to satisfy the unpaid judgment from the underlying Texas arbitration award and judgment. *Id.*

On August 7, 2017, Plaintiffs and Wells Fargo stipulated to the voluntary dismissal with prejudice of this case against Wells Fargo and any claims Plaintiffs asserted or could have asserted against Wells Fargo. [DE 57]. The Court entered an Order of Dismissal with prejudice as to Defendant Wells Fargo Bank, N.A. on August 10, 2017. [DE 61].

On August 7, 2017, the same day as the stipulation of voluntary dismissal [DE 57], Plaintiffs filed their response to Defendant's Petition for Writ of Garnishment, and argued that Plaintiffs were specifically and contractually prohibited from disclosing the terms of the settlement, that the Petition was premature because Plaintiffs' claims were still pending against Defendant Brendel, and that the judgment referred to by Defendant involves an entirely separate set of

3

issues than those presently in front of the Court. [DE 58].

On August 10, 2017, the Petition for Writ of Garnishment was referred to the undersigned by Judge Marra. *See* DE 60. On August 18, 2017, this Court set an evidentiary hearing on Defendant Brendel's Petition for Writ of Garnishment for Thursday, September 7, 2017. [DE 62]. In that August 18, 2017 Order, the Court stated that in order to maintain the status quo, any funds owed to either or both Plaintiffs Scott Meyrowitz and/or SSB International, LLC "shall not be disbursed pending further order of this Court." [DE 62, pg. 2, ¶ 8]. The Court also required that the parties file a joint notice on or before Friday, September 1, 2017, advising the Court of the estimated length of the hearing as well as the estimated number of exhibits and witnesses. [DE 62, pg. 2]. On September 1, 2017, the parties filed a Joint Notice in preparation for the evidentiary hearing. [DE 63]. In the notice, the parties estimated that the hearing would take approximately one hour, and the parties listed witnesses and exhibits that they anticipated would be called or introduced at the hearing. *Id.* However, due to Hurricane Irma, the Court had to reschedule the hearing from Thursday, September 7, 2017 to Tuesday, September 26, 2017. [DE 64].

### C. September 26, 2017 Evidentiary Hearing

The Court held an evidentiary hearing on the Petition for Writ of Garnishment on September 26, 2017. [DE 65]. At the hearing, Lawrence Caplan, Esq., counsel for Plaintiffs, informed the Court that he had received the settlement proceeds from Wells Fargo on August 7, 2017, and immediately deposited them into his trust account. He also stated that he had disbursed the settlement proceeds the following day—on August 8, 2017—to Mary Meyrowitz.[1] He stated

---

[1] Although it was not specifically stated at the September 26, 2017 evidentiary hearing, Mr. Caplan stated in his September 29, 2017 affidavit that on the morning of August 8, 2017, he received a telephone call from Plaintiff

that he disbursed the funds to Mary Meyrowitz because she was a party to the settlement between Plaintiffs and Wells Fargo, but she was not a judgment debtor of Defendant Brendel. Mr. Caplan argued that because the money representing the settlement proceeds had already been disbursed by him, the Petition for Writ of Garnishment [DE 56] was moot. This was the very first time this disbursement or mootness issue was raised by Plaintiffs, or by Plaintiffs' counsel, Mr. Caplan.

The Court, verbally and later by written order, ordered Plaintiffs to submit to the Court and to Defendant Greg Brendel, on or before October 3, 2017, a copy of the settlement agreement between Plaintiffs and Defendant Wells Fargo; documentation or an affidavit which reflects when the settlement funds were received by Plaintiffs' counsel and when they were disbursed; and documentation of the transfer of funds, including the amount transferred, the time and date of the transfer, the recipient of the transfer, and the details of the account to which the funds were transferred. [DE 66]. The Court also ordered Defendant to determine and advise the Court on or before October 10, 2017 if the Petition for Writ of Garnishment was moot in light of the settlement agreement and documentation of the disbursement of funds. *Id.*

Plaintiffs filed the required exhibits, affidavits, and information on September 29, 2017. [DE 67, DE 68]. On October 10, 2017, Defendant Brendel filed his Notice Regarding Petition for Writ of Garnishment, and informed the Court that Defendant believed that the Petition for Writ of Garnishment was moot based upon Mr. Caplan's representations to the Court during the hearing that the monies had been disbursed and in light of the documents subsequently produced by Plaintiffs. [DE 69]. On October 16, 2017, the Court denied the Petition for Writ of

---

Scott Meyrowitz who asked Mr. Caplan to reduce his fee and return some additional money to Mr. Meyrowitz. [DE 67-1, pg. 1, ¶ 6]. Mr. Caplan did so by writing a check to Plaintiff Scott Meyrowitz dated August 8, 2017 in an amount equal to 4.5% of the total settlement amount. *Id.*

Garnishment as moot. [DE 70].

**D.  The Motion for Sanctions, Response, and Reply**

Defendant subsequently filed its Motion for Sanctions and Request for Hearing on December 7, 2017. [DE 71]. In his Motion, Defendant Brendel asks that the Court impose sanctions in the form of the lost value of the settlement funds, and costs, expenses, and attorney's fees. In support, Defendant argues that Mr. Caplan disbursed the settlement funds at issue to Mary Meyrowitz in order to avoid process. Defendant claims that the disbursement of the funds by Mr. Caplan was intended to thwart the efforts of Defendant Brendel to levy on the settlement funds. [DE 71, pg. 5, ¶ 13]. Defendant claims that Mary Meyrowitz has "no legitimate claim in this matter" because she has no interest in SSB International, LLC. [DE 71, pg. 5]. Defendant also argues that the accounts referenced in Mr. Caplan's affidavits are believed to be jointly owned by Scott and Mary Meyrowitz. [DE 71, pg. 6]. Defendant finally argues that he had to incur substantial and wholly unnecessary costs, expenses, and attorney's fees to prepare for the September 26, 2017 hearing which could have been obviated if Mr. Caplan had informed Defendant or the Court that his trust account had been divested of the settlement funds weeks prior to the hearing date. *Id.*

Plaintiffs filed their Response to Defendant's Motion for Sanctions on December 20, 2017. [DE 73]. Plaintiffs argue that they electronically filed their Response to the Petition for Writ of Garnishment [DE 58] on August 7, 2017, before receiving the settlement proceeds from Wells Fargo. [DE 73, pg. 2]. Plaintiffs claim that their counsel, Mr. Caplan, received the settlement proceeds check from Wells Fargo later in the day on August 7, 2017. *Id.* Mr. Caplan states that he deposited the settlement check into his attorney trust account. *Id.* Mr. Caplan

claims that, the next morning, August 8, 2017, he left a check, from his trust account, representing 72% of the total settlement proceeds made payable to Mary Meyrowitz. *Id.*[2] He transferred 27% of the total settlement proceeds to his operating account, which reflected Mr. Caplan's contingency fees. *Id.* 1% of the funds was held back in order to cover costs incurred. *Id.*[3]

Mr. Caplan states that to the best of his knowledge, the trust account check to Mary Meyrowitz was ultimately deposited into a Bank of America checking account ending in 2288, an individual account in the name of Mary Meyrowitz. *Id.* Mr. Caplan states that he made the trust check payable to Mary Meyrowitz pursuant to the terms of the settlement agreement and the specific requests of Plaintiffs, and that he was not obligated to split the settlement proceeds between the Plaintiffs in any specific manner. *Id.*

Mr. Caplan argues that at the time he made the disbursement out of his trust account to Mary Meyrowitz, he was unaware of any judgment which had been entered against Mrs. Meyrowitz in favor of Defendant Brendel. [DE 73, pg. 3]. Thus, he claims that he did not believe that the pending Petition for Writ of Garnishment had any legal effect against Mrs. Meyrowitz and he could disburse the settlement funds to her as provided in the settlement agreement. *Id.*

Finally, Plaintiffs' counsel argues that he could not inform Defendant, Defendant's counsel, or this Court that he had disbursed the proceeds from the settlement on August 8, 2017 because he would have violated the express terms of the settlement agreement, and would have violated the Rules Regulating the Florida Bar, Rules of Professional Conduct, Rule 4-1.6, which

---

[2] The Court is using percentages of the settlement amount, rather than actual monies disbursed, to protect the confidentiality of the Settlement Agreement entered into between Plaintiffs and Defendant Wells Fargo.
[3] Although Plaintiffs do not point this out in their Response, Mr. Caplan also disbursed 4.5% of the total settlement amount to Scott Meyrowitz on August 8, 2017, accepting a reduction of Mr. Caplan's contingency fee by the same amount. [DE 67-1, pg. 1, ¶ 6].

requires that "a lawyer must not reveal information relating to representation of a client," subject to some exceptions, unless a client gives informed consent. [DE 73, pg. 6]. Mr. Caplan argues that his "preeminent obligation" was to keep "any and all information related to his client in complete confidence," [DE 73, pg. 8] and therefore he was not obligated to inform the Court, or Defendant and defense counsel, that he had already disbursed the funds. [DE 73, pg. 9].

Defendant filed his Reply on December 27, 2017. [DE 76]. In reply, Defendant argues that the circumstances support Defendant Brendel's belief that this transaction was the "latest effort in a series of fraudulent transfers" to evade Brendel's efforts to collect his outstanding judgment. [DE 76, pg. 1]. Defendant also points out that, according to Mr. Caplan's argument, if there was no dispute as to the ownership of 72% of the proceeds of the settlement that went to Mary Meyrowitz, then the remaining percentage of the proceeds which went to Scott Meyrowitz should be considered "disputed" under the Rules Regulating the Florida Bar. [DE 76, pg. 2]. Defendant cites to Florida Rule of Professional Conduct 5-1.1(f), arguing that the Rule controls in situations where two or more persons claim interests in property in the possession of an attorney, and in such a situation, an attorney is obligated to treat the property in dispute as "trust property." [DE 76, pg. 3].

Defendant also argues in his Reply that sanctions are appropriate because Mr. Caplan created "the appearance that he would be challenging the garnishment request on the merits" before attending the hearing and informing the Court that the Petition was moot because he had already disbursed the funds. [DE 76, pg. 4]. Defendant rejects Plaintiffs' argument that Mr. Caplan was bound by confidentiality. *Id.* Defendant argues that it was clear that Defendant was already aware of the settlement agreement because the Notice of Settlement was filed on the

docket. *Id.* Defendant argues that "common courtesy and the standards promoted in this District" would have obviated the time and expense spent in preparation of and during the September 26, 2017 hearing, and thus, sanctions are appropriate. *Id.*

## II.    <u>THE FEBRUARY 28, 2018 EVIDENTIARY HEARING</u>

The undersigned held an evidentiary hearing on the Motion for Sanctions on February 28, 2018. Certain witnesses testified at that hearing and certain exhibits were admitted, as discussed below. Counsel for Defendant and counsel for Plaintiffs both made opening statements. The Court then proceeded to testimony and introduction of exhibits, as discussed below.

### a.    <u>Lawrence Caplan</u>

Defendant called as its first witness, Lawrence Caplan, Esq. Mr. Caplan represents Plaintiffs Scott Meyrowitz, Mary Meyrowitz, and SSB International, LLC in this case. Mr. Caplan testified that he has been a member of the Florida bar since 1984 and has owned his own practice since 1996. [DE 97, pg. 25]. He filed the complaint on behalf of Plaintiffs in this case. *Id.* Mr. Caplan testified that he rarely communicated with his clients' previous counsel in the underlying Texas case. *Id.* Although he was present at some of the arbitration proceedings involving Mrs. Meyrowitz, he did not take notes and does not recall the testimony. *Id.* Mr. Caplan testified that he did not recall the contents of a Rule 11 letter sent to him by Defendant Brendel's counsel. [DE 97, pgs. 27-28]. Mr. Caplan entered into the settlement agreement with Wells Fargo on July 6, 2017. [Exhibit 2]. He testified that he received the Petition for Writ of Garnishment on July 28, 2017. [DE 97, pg. 32]. Mr. Caplan testified that although the terms of the settlement dictated that he receive a settlement check within thirty days, which would have been on or before August 5, 2017, he did not receive a check until August 7, 2017. [DE 97, pg.

35]. The check was dated August 2, 2017. *Id.*

Mr. Caplan testified that Florida Rule of Professional Conduct 5-1.1(f) only applies to internal disputes over money, and that Defendant Brendel had no interest in the settlement proceeds. [DE 97, pgs. 35-36]. Mr. Caplan testified that he disbursed a portion of the settlement proceeds to Mary Meyrowitz. [DE 97, pg. 41]. He also testified that on August 8, after he made the disbursement to Mary Meyrowitz, Scott Meyrowitz called him and asked him to lower his fee. [DE 97, pg. 41, lines 12-20]. Mr. Caplan agreed, and issued Mr. Meyrowitz a check. *Id.* He admitted that this disbursement was improper and that he should not have given Mr. Meyrowitz any of the settlement funds. *Id.;* DE 97, pg. 18, lines 4-15.

Mr. Caplan acknowledged that this Court entered an Order freezing the funds from the settlement proceeds. He also acknowledged that he did not notify the Court or opposing counsel of the disbursement and went forward listing witnesses and exhibits in preparation for the hearing. [DE 97, pg. 43, lines 11-14; lines 15-17]. He testified that he conferred with Defendant's counsel in order to file a joint notice. [DE 63; DE 97, pgs. 43-44]. He also testified that he listed Alan Shore as a witness in order to impeach Defendant Brendel. [DE 97, pg. 44]. He testified that the first time he told anyone about the disbursement of the proceeds was during the Court's hearing on the Petition for Garnishment on September 26, 2017. [DE 97, pg. 46, lines 13-20]. He also testified that he was aware of the Final Judgment from the arbitration in the underlying Texas case. [DE 97, pg. 47, lines 2-4]. Defendant called no more witnesses.

### b.  **Mary Meyrowitz**

Plaintiffs first called Mary Meyrowitz, who testified that she had been married to Scott Meyrowitz for ten years. [DE 97, pg. 55, line 2]. She testified that her accounts, and accounts she

had an interest in, were frozen as a result of a case where Defendant Brendel was a Plaintiff. [DE 97, pg. 55, lines 12-15]. She stated that her accounts, including her personal Bank of America account, her Scottrade account, and her son's savings accounts, were all frozen because Defendant Brendel went to Wells Fargo Bank, obtained her account records, and gave them out to third parties. [DE 97, pg. 55, line 18-23]. Mrs. Meyrowitz testified that she believed that Defendant Brendel "hacked or illegally accessed" her Wells Fargo accounts. [DE 97, pg. 56, lines 5-9].

Mrs. Meyrowitz also testified that she was aware of the confidential settlement reached between her, her husband, SSB International, LLC, and Wells Fargo. [DE 97, pg. 57, lines 9-11]. She stated that she was included in the settlement because she was damaged by the actions of Wells Fargo. [DE 97, pg. 57, lines 14-18]. She testified that there is no judgment entered against her in either Texas or Florida. [DE 97, pg. 57, lines 19-21]. Mrs. Meyrowitz testified that she and her husband discussed how to distribute the funds, and determined that the funds should go to her because there is no judgment against her. [DE 97, pg. 58, lines 6-14].

Mrs. Meyrowitz testified that she and her family had been under "great financial distress," so she used the funds she received to pay rent, credit card bills, back bills, and to pay for necessities for her children. [DE 97, pg. 58, lines 17-20]. She stated that she did not pay the settlement money to Scott Meyrowitz, nor she did move any of the money offshore or into a state with an asset protection trust statute. [DE 97, pg. 59]. She testified that she used the funds solely for her family's benefit. [DE 97, pg. 59, lines 8-10]. These were joint bills and expenses of hers and her husband, Scott Meyrowitz. She stated that she understood that Mr. Caplan wrote a second check to her husband because he realized that the settlement had been much less than

what the family had expected. [DE 97, pg. 59, lines 22-24]. She testified that it was her own signature on the signature card of the Bank of America account ending in 2288 and that the account had always been solely in her name. [DE 97, pg. 61, lines 4-9].

On cross examination, Mrs. Meyrowitz stated that she was not sure if the federal case in Texas was still pending against her. [DE 97, pg. 62, line 22]. She testified she paid the family's bills in various ways, including by check. [DE 97, pg. 67]. She also testified that she withdrew a large amount of the proceeds from her account in cash. [DE 97, pg. 69, lines 1-7; DE 97, pg. 70]. However, Mrs. Meyrowitz maintained that she used all of the money to pay for family expenses. [DE 97, pg. 70, lines 10-17]. She also testified that the rent that she paid included the rent of Scott Meyrowitz, and the electric bill that she paid was the electric bill where Scott Meyrowitz lives. [DE 97, pg. 69].

### c.  **Greg Brendel**

Plaintiffs' counsel briefly called Defendant Brendel. He testified that he lived in Texas, and knew Scott and Mary Meyrowitz through his wife. [DE 97, pg. 72]. He testified that he was not a party to the settlement agreement between Plaintiffs and Wells Fargo. *Id.*

### d.  **Exhibits**

At the hearing, Defendant entered eighteen exhibits without objection from Plaintiffs. Plaintiffs entered one exhibit. The exhibits included the Final Award of the Arbitration in the underlying case [Defendant's Exhibit 1]; the Confidential Settlement Agreement and General Release between Plaintiffs and Wells Fargo [Defendant's Exhibit 2]; the Petition for Writ of Garnishment [Defendant's Exhibit 3]; the Response in Opposition to the Petition for Writ of Garnishment [Defendant's Exhibit 4]; the Affidavit of Lawrence Caplan [Defendant's Exhibit 5];

the trust account records of Lawrence Caplan, P.A. [Defendant's Exhibit 6]; Check Number 2592 from Lawrence Caplan, P.A. to Mary Meyrowitz [Defendant's Exhibit 7]; Check Number 2594 from Lawrence Caplan, P.A. to Scott Meyrowitz [Defendant's Exhibit 8]; the Bank of America Personal Signature Card of Mary M. Meyrowitz for the account ending in 2288 [Defendant's Exhibit 9]; the Bank of America Statement for the account ending in 2288 from July 22, 2017 through August 23, 2017 [Defendant's Exhibit 10]; the Joint Venture Agreement entered into by SSB International and Greg Brendel [Defendant's Exhibit 11]; the Wells Fargo Combined Statement of Accounts relating to SSB International and Greg Brendel from January 1, 2014 through May 31, 2015 [Defendant's Exhibit 12]; the Scottrade account statements for Mary Meyrowitz from November 2013 through May 2015 [Defendant's Exhibit 13]; the deposition of Mary Meyrowitz [Defendant's Exhibit 14]; the Rule 11 letter written to Lawrence Caplan [Defendant's Exhibit 15]; the transcript of the June 2, 2015 hearing on the temporary injunction [Defendant's Exhibit 16]; a December 17, 2017 email from Maria Castellanos to Lawrence Caplan [Defendant's Exhibit 17]; and an August 4, 2017 letter from Jamie Zysk Isani to Lawrence Caplan [Defendant's Exhibit 18]. Plaintiffs admitted Exhibit 14, a copy of the Wells Fargo Check to Lawrence A. Caplan, P.A.'s trust account, dated August 2, 2017. [Plaintiffs' Exhibit 14].

### III.   POST-HEARING MEMORANDA

Plaintiffs and Defendant submitted written post-hearing memoranda on March 12, 2018. [DE 95, DE 96]. In Defendant's memorandum, Defendant argues that his counsel made significant preparations for the initial hearing on the Petition for Writ of Garnishment [DE 56] scheduled for September 26, 2017, in response to Plaintiffs' disclosures regarding proposed witnesses and

exhibits in the joint notice [DE 63]. Defendant argues that the disbursement to Mary Meyrowitz was "specifically intended to thwart Brendel's efforts to levy upon the settlement funds." [DE 96, pg. 7]. Defendant also argues that Mr. Caplan should not have disbursed the settlement funds into Mrs. Meyrowitz' Bank of America account, because he knew or should have known that Scott Meyrowitz routinely used accounts in the name of Mary Meyrowitz to "funnel funds from his various joint ventures, and to pay his own personal expenses." [DE 96, pgs. 7-8]. Defendant points to Mrs. Meyrowitz' hearing testimony in which she admitted to using the settlement funds to satisfy obligations for which Scott Meyrowitz is likely jointly liable, including rent and utility bills. [DE 96, pg. 8]. Finally, Defendant argues that the September 26, 2017 hearing itself could have been avoided by a simple notification to defense counsel and the Court that the settlement funds had been disbursed on August 8, 2017. *Id.*

Defendant rejects Plaintiffs' argument that Mr. Caplan was free to make the disbursement of settlement funds because he was unaware of any judgment against Mary Meyrowitz in favor of Greg Brendel. *Id.* Defendant argues that Mr. Caplan's actions are sanctionable due to his unilateral decision to disburse the settlement funds, despite a pending motion for a writ of garnishment. [DE 96, pg. 9]. Defendant adds that even if Mr. Caplan is correct and there is no dispute as to the funds disbursed to Mrs. Meyrowitz, Mr. Caplan disbursed a portion of the settlement funds to Scott Meyrowitz, which "by the Plaintiffs' own logic" would be considered disputed for the purposes of the Rules Regulating the Florida Bar, Rules of Professional Conduct, Rule 5-1.1(f). *Id.* Defendant argues because Rule 5-1.1(f) expressly applies to the instant situation, Mr. Caplan should not have disbursed the funds. He also argues that Mr. Caplan had an affirmative ethical obligation to inform defense counsel and the Court of the disbursement

of the funds rather than proceed with the September 26, 2017 hearing. [DE 96, pg. 10].

Finally, Defendant asserts that this Court should award sanctions because Mr. Caplan has never offered a legitimate excuse for failing to notify the Court or defense counsel that he could not comply with the Court's August 18, 2017 Order [DE 62] preserving the status quo and ordering that any funds owed to either Scott Meyrowitz and/or SSB International, LLC not be disbursed. [DE 96, pg. 10]. Defendant maintains that Mr. Caplan's claim that he could not advise anyone about the distribution due to the confidentiality provision in the settlement agreement is nonsensical. [DE 96, pg. 11]. Defendant asserts that any confirmation that the funds were no longer in Mr. Caplan's account would have avoided countless unnecessary attorney's fees and costs and Mr. Brendel's unnecessary trip from Dallas, Texas to West Palm Beach, Florida. *Id.*

In Plaintiffs' memorandum [DE 95], Plaintiffs maintain that the Rules Regulating the Florida Bar, Rules of Professional Conduct, Rule 6-1.1 prevented Mr. Caplan from disclosing the fact that he had already disbursed the settlement funds. [DE 95, pg. 3]. Mr. Caplan asserts that his duty as a zealous advocate to his clients "outweighed any need to apprise the Court in advance of the hearing of the settlement distributions." [DE 95, pg. 4]. Mr. Caplan points out that the cause of action for a fraudulent conveyance differs from the cause of action for the common law tort of fraud and deceit and argues that neither Mary Meyrowitz nor Scott Meyrowitz completed a fraudulent conveyance. [DE 95, pgs. 5-7]. Finally, Mr. Caplan argues that Defendant's request for attorney's fees, expenses, and costs reasonably associated with Plaintiffs' responses to and defense of this Motion for Sanctions should be denied, because the Motion was "unreasonable and vexatious in manner and only served to multiply needlessly the proceedings in this matter." [DE 95, pg. 7].

# IV.   DISCUSSION AND ANALYSIS

Defendant Brendel requests that this Court grant monetary sanctions in the amount of the lost value of the settlement funds which Mr. Brendel will likely now be unable to recover, and costs, expenses, and attorney's fees related to preparing for and attending the September 26, 2017 hearing on the Petition for Writ of Garnishment. Defendant asks the Court to accomplish this request through the use of its inherent power.

The Court's inherent power is derived from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal citations and quotation marks omitted). Courts have long been recognized as having certain implied powers that are "necessary to the exercise of all others." *Id.* at 43 (citing *United States v. Hudson,* 7 Cranch 32, 34, 3 L.Ed. 259 (1812) and *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers,* 501 U.S. at 43 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). A court's "inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices." *Id.* at 46.

A federal court possesses the inherent power to impose sanctions when there has been willful misconduct. *See Id.* at 44. To exercise its inherent power to impose sanctions, a court must find that the party acted in bad faith. *McDonald v. Cooper Tire & Rubber Co.,* 186 Fed. Appx. 930, 931 (11th Cir. 2006); *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1335 (11th Cir. 2002); *see also Thomas v. Tenneco Packaging Co.,* 293 F.3d 1306, 1320 (11th Cir.

2002) (noting that "before a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct constituted or was tantamount to bad faith.") (citation and quotations marks omitted).

The Court has the ability to assess attorney's fees and costs against the client or his attorney, or both, when the client or attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *McDonald*, 186 Fed. Appx. at 931 (citation omitted). A party seeking to invoke this inherent power must prove bad faith by clear and convincing evidence. *See JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts and Quartz Crystals,* 93 F.Supp.3d 1331 (S.D.Fla. 2015), aff'd sub *nom JTR Enterprises, LLC v. Columbian Emeralds,* 697 F. App'x 976 (11th Cir. 2017) (holding that a movant must prove sanctionable conduct by clear and convincing evidence to invoke the a court's inherent power to sanction bad-faith litigation conduct); *Barash v. Kates,* 585 F.Supp.2d 1347, 1365 (S.D.Fla. 2006). A party shows bad faith "by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers,* 501 U.S. at 46 (quoting *Hutto v. Finney,* 437 U.S. 678, 689. 14 (1978)).

With these principles in mind, the Court must determine whether sanctions against Plaintiffs Scott Meyrowitz, Mary Meyrowitz, and SSB International, LLC, and against Mr. Lawrence Caplan, Esq., are appropriate, and if so, the nature of the sanctions that should be imposed.

### A. <u>Attorney's Fees and Costs</u>

Defendant seeks costs, expenses, and attorney's fees related to preparing for and attending the September 26, 2017 hearing on the Petition for Writ of Garnishment, which petition or motion became moot after Mr. Caplan's belated disclosure, during the hearing, that he

had previously disbursed the proceeds from the settlement between Plaintiffs and Wells Fargo Bank. Mr. Caplan stated during his testimony at the February 28, 2018 evidentiary hearing on the motion for sanctions that he received the Petition for Writ of Garnishment when it was filed on July 28, 2017. [DE 56; DE 97, pg. 32]. He filed the Response in Opposition to the Petition for Writ of Garnishment on August 7, 2017, and made no mention of the fact that he had already disbursed, or was planning to disburse, the settlement funds immediately upon receipt. Instead, he argued that the Petition was premature and irrelevant to the instant matter. [DE 58]. Mr. Caplan was aware that this Court had entered an Order freezing the disbursement of the funds from the settlement proceeds on August 18, 2017. [DE 62]. After that Order was entered, he still made no mention to defense counsel or to this Court that the Order had been entered in vain because he had already disbursed the funds at issue to Plaintiffs on August 8, 2017. Instead, he went forward with listing witnesses and exhibits in preparation for the hearing which was originally scheduled for September 7, 2017, knowing full well that he had already disbursed the funds at issue. He filed a joint notice in accordance with the Court's Order [DE 63] on September 1, 2017 and yet again failed to inform both defense counsel and the Court that the hearing would not be necessary because he held no funds. He listed specific witnesses, including a witness intended to impeach Defendant Brendel, even though he knew there was no need for any testimony due to the fact that he had already disbursed the funds at issue. Even when the Court was forced to delay the hearing by 19 days due to Hurricane Irma [DE 64], Mr. Caplan still failed to inform the Court that the Petition for Writ of Garnishment was moot due to the fact that he held no funds. In fact, Mr. Caplan testified at the February 28, 2018 hearing that the first time he told *anyone* about the disbursement was during the Court's hearing on the Petition for

18

Garnishment on September 26, 2017.

At the February 28, 2018 evidentiary hearing on Defendant's Motion for Sanctions, the following colloquy took place:

> THE COURT: So your position then is that you couldn't even tell the Court or opposing counsel that you had no money to disburse because of that; is that what your position is?
>
> MR. CAPLAN: I'm saying I could not discuss without authority from Wells Fargo --
>
> THE COURT: I asked you direct question.
>
> MR. CAPLAN: I'm sorry.
>
> THE COURT: The direct question is this. We had a hearing set before me and all I wanted to know is, your position is that you could not advise the Court or opposing counsel that the issue was moot because no funds were in your trust account.
>
> MR. CAPLAN: I think it is an open question, and I would answer that's true because I vigorously was going to follow that rule. That rule, if you look at the rule specifically, it makes it very clear that you have to get permission from your clients. My clients will testify they were not about to give me any permission. There were other ways that they could have discovered this.
>
> THE COURT: Okay, go ahead.
>
> MR CAPLAN: They chose not to pursue them.

[DE 97, pg. 16, lines 3-24]. The Court does not accept Mr. Caplan's explanation that he was precluded from advising the Court and opposing counsel that the monies had been disbursed, or that he held no monies subject to garnishment, or that the Petition for Writ of Garnishment was moot. Mr. Caplan had ample opportunity to inform the Court and defense counsel of the mootness of the motion and he failed to do so. Mr. Caplan's failure to maintain candor with both defense counsel and this Court led to the waste of time and resources not only of defense counsel and Defendant Brendel, but also of this Court in researching, preparing for, and holding an unnecessary hearing.

Put simply, Mr. Caplan acted unreasonably in failing to disclose to the Court and Defendant and his counsel at any point prior to the September 26, 2017 evidentiary hearing on the Petition for Writ of Garnishment, the very simple fact that he no longer held any settlement funds as of August 8, 2017, and that the Petition for Writ of Garnishment was therefore moot. Mr. Caplan's assertion that informing the Court and defense counsel would violate his duty of confidentiality is wholly without merit. A notification to the Court and opposing counsel that he held no funds subject to a writ of garnishment, and that therefore the pending motion was moot, would not violate any duty to the client or any confidentiality obligation. The Notice of Settlement between Plaintiffs and Wells Fargo was entered onto the docket, which is public record. Therefore, Mr. Caplan had no problem advising opposing counsel and the Court that his clients had entered into a settlement agreement with Defendant Wells Fargo. Acknowledging that he had disbursed any settlement funds—or alternatively, that he was not in possession of any settlement funds and that the pending motion was moot—would in no way have violated Mr. Caplan's duty to his clients, nor would it have violated the confidentiality of the settlement agreement.

Mr. Caplan's argument that his "preeminent obligation" was to keep "any and all information related to his client in complete confidence" [DE 73, pg. 8] and therefore he was not obligated to inform the Court or defense counsel or Defendant that he had already disbursed the funds [DE 73, pg. 9] completely ignores his duty of professionalism and candor to the Court and opposing counsel. *See, e.g.,* S.D. Fla. Local Rules, General Rules, Introductory Statement ("…Indeed, it is a fundamental tenet of this Court that attorneys in this District be governed at all times by a spirit of cooperation, professionalism, and civility…"). Mr. Caplan could have

zealously represented his clients without violating any client confidences by simply telling the Court and opposing counsel that he held no monies subject to garnishment and the pending petition for writ of garnishment was moot. Mr. Caplan's argument otherwise is meritless. Mr. Caplan's actions and lack of candor have caused the Court, defense counsel, and Defendant Greg Brendel to unnecessarily expend significant time and resources on this matter. The actions of Mr. Caplan and Plaintiffs Scott Meyrowitz, Mary Meyrowitz, and SSB International in vigorously litigating a moot motion for writ of garnishment, and in not being candid and forthright regarding the mootness of the motion, were frivolous, dilatory, vexatious, in bad faith, and constitute willful misconduct. Such conduct unnecessarily multiplied this proceeding.

The Court also notes that Plaintiff's counsel, Mr. Caplan, has made a point to argue that when he electronically filed Plaintiff's Response in Opposition to the Petition for Writ of Garnishment on August 7, 2017 [DE 58], he had not yet received the settlement proceeds. *See* Affidavit of Lawrence Caplan, DE 67-1, ¶ 3; *see* Response, DE 73, ¶ 3. This argument is apparently intended to show that he could not have advised the Court and opposing counsel of the disbursement in his Response filed August 7, 2017, because the settlement proceeds had not been received at the time he filed Plaintiff's Response. Further, Mr. Caplan's Affidavit states that: "Later that same day, the Wells Fargo check...arrived in the mail and Plaintiffs' counsel deposited the check into his attorney trust account at City National Bank." [DE 67-1, ¶ 4]. However, this assertion and representation of Mr. Caplan that he received the settlement check after he electronically filed his Response on August 7, 2017 is called into question when the evidence of record is carefully reviewed.

First, Plaintiffs' Response in Opposition to the Petition for Writ of Garnishment was filed

on August 7, 2017 at 5:50 p.m. [DE 58, Notice of Electronic Filing]. Second, a review of the deposit transaction receipt attached to Mr. Caplan's affidavit reflects that the settlement proceeds were deposited into Mr. Caplan's trust account on August 7, 2017 at 3:29 p.m. [DE 67-1, pg. 5]. Therefore, according to the documentary evidence of record, it appears that the settlement proceeds were deposited before Plaintiffs' counsel electronically filed the Response. The Court notes this discrepancy and is troubled by it. But, this discrepancy is not the reason sanctions are being imposed against Plaintiffs and Plaintiffs' counsel. Instead, sanctions are being imposed against Plaintiffs and Plaintiffs' counsel for costs, expenses, and attorney's fees incurred by Defendant Brendel and his counsel because Plaintiffs and Plaintiffs' counsel strenuously litigated a petition for writ of garnishment from August 7, 2017 through September 26, 2017 knowing full well that the motion was moot because the settlement proceeds had been disbursed on August 8, 2017. The actions of Plaintiffs and Plaintiffs' counsel in actively opposing the Petition for Writ of Garnishment, listing witnesses and exhibits, causing the Court, Defendant, and Defendant's counsel to prepare for and attend the September 26, 2017 evidentiary hearing, and yet never once advising the Court and opposing counsel that all of this time, effort and expense was in vain due to Plaintiffs' counsel's disbursement of the funds at issue on August 8, 2017, some 50 days prior to the September 26, 2017 evidentiary hearing, cannot be condoned or justified. This is a litigation abuse which must be dealt with by the Court pursuant to its inherent power. Sanctions in the form of attorney's fees, costs, and expenses incurred by Defendant are appropriate and required in this case. Plaintiffs' counsel's argument that he could not have simply advised the Court and Defendant's counsel that the motion was moot, or that he was not holding any funds, or that the funds had been disbursed on August 8, 2017, ostensibly because of confidentiality and

zealous advocacy concerns, is wholly and completely without merit.

The actions of Plaintiffs and Plaintiffs' counsel caused Defendant's counsel to confer via email and file, on September 1, 2017, a Joint Notice of Parties in Preparation for Hearing on Greg Brendel's Petition for Writ of Garnishment [DE 63], in which it was noted that the parties had conferred and one hour was needed for the evidentiary hearing [DE 63, pg. 1, ¶ 1]. Further, the Joint Notice listed witnesses to be called by both Plaintiffs and Defendant and listed exhibits to be introduced by both Plaintiffs and Defendant. [DE 63, pgs. 1-3]. During the conferral for this Joint Notice, Plaintiffs' counsel never once candidly advised Defendant's counsel that he was holding no funds or that the motion was moot as he should have done. Further, Defendant's counsel was forced to prepare for the September 26, 2017 hearing and was forced to have his client fly in from Texas to testify at the evidentiary hearing due to the witnesses listed by Plaintiffs in the Joint Notice.

The Court finds by clear and convincing evidence that these actions of Plaintiffs and Plaintiffs' counsel constituted willful litigation misconduct, were undertaken in bad faith, were vexatious, and unnecessarily multiplied this litigation. The simple fact is that Plaintiffs' counsel should have promptly advised the Court and opposing counsel that he held no funds subject to garnishment as of August 8, 2017 and that the motion was moot. This candor and professionalism would have avoided wasteful preparation, time, and expenses incurred by Defendant's counsel and Defendant. Therefore, the Court will order payment of the specific litigation expenses, costs, and fees which were incurred by Defendant because of the litigation misconduct at issue committed by Plaintiffs and Plaintiffs' counsel. *See Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186, 197 L.Ed.2d 585 (2017) (A court must, when

using its inherent sanctioning authority, establish a causal link between the litigant's misbehavior and the legal fees to be paid by the opposing party.)

Thus, the Court finds that Mr. Lawrence Caplan, Esq., and Plaintiffs shall be required to pay the reasonable costs, expenses and attorney's fees of Defendant directly associated with litigating the Petition for Writ of Garnishment [DE 56] as well as the pending Motion for Sanctions [DE 71].[4] This includes the reasonable attorney's fees, costs, and expenses incurred by Defendant as a result of defense counsel's preparation for and appearance at the evidentiary hearings held on September 26, 2017, and February 28, 2018, and the costs of Mr. Brendel's travel to attend both hearings and then return to Texas.

### B. The Lost Value of the Settlement Funds

In addition to costs, expenses, and attorney's fees, Defendant Brendel also requests that this Court grant monetary sanctions in the amount of the lost value of the settlement funds which Mr. Brendel will likely now be unable to recover, due to Plaintiffs and Mr. Caplan's actions in disbursing the settlement funds without leave of the Court. Defendant cites to Florida Rule of Professional Conduct 5-1.1(f) to support his position that Mr. Caplan improperly transferred the settlement proceeds to Mary Meyrowitz (and Mr. Meyrowitz) because the proceeds were disputed funds. Florida Rule of Professional Conduct 5-1.1(f) states that:

> "When in the course of representation a lawyer is in possession of property in which 2 or more persons (1 of whom may be the lawyer) claim interests, the property shall be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm shall be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute

---

[4] The Eleventh Circuit has held that "fees on fees" are compensable. *See Norelus v. Denny's, Inc.,* 628 F.3d 1270, 1301 (11th Cir. 2010), *see also Williams v. R.W. Cannon, Inc.,* 657 F. Supp. 2d 1302, 1318 (S.D. Fla. 2009) (awarding fees to party for filing post trial motion on fees). The Court finds that fees on fees are necessary and appropriate in this case.

all portions of the property as to which the interests are not in dispute."

In regards to Mr. Caplan's decision to disburse the funds to Mrs. Meyrowitz and Mr. Meyrowitz on August 8, 2017, Defendant is free to consider pursuing a fraudulent conveyance action or other civil action against Plaintiffs and Plaintiffs' counsel. However, the Court will not order such relief based upon the motion for sanctions pending before the Court. The Court is extremely wary of ordering such relief based upon its "inherent authority" when a civil action for fraudulent transfer, or other civil action, likely provides a basis for relief to Defendant. *See Goodyear Tire,* 137 S. Ct. at 1186 ("[A] fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." (citing *Mine Workers v. Bagwell,* 512 U.S. 821, 829, 114 S. Ct. 2552, 129 L.Ed.2d 642 (1994))). Defendant is free to pursue any civil action he believes appropriate against Plaintiffs and Mr. Caplan; however, this Court will not decide a fraudulent conveyance action within the confines of a motion for sanctions when an adequate remedy at law exists, nor will it assess an additional amount of sanctions "as punishment" for Plaintiffs' and Plaintiffs' counsel's alleged misbehavior.

Further, the Court finds that the question of whether Mr. Caplan's actions in disbursing monies to judgment debtor Scott Meyrowitz[5] and to Plaintiff Mary Meyrowitz, at a time when judgment creditor Greg Brendel held a more than one million dollar judgment against Scott Meyrowitz and SSB International, LLC, and at a time when a Petition for Writ of Garnishment was pending, violated the Florida Rules of Professional Conduct, is not something that the Court need decide at this time pursuant to the pending motion for sanctions. Under the facts of this case, such

---

[5] At the February 28, 2018 evidentiary hearing, Mr. Caplan admitted that he should not have disbursed any of the settlement funds to Plaintiff Scott Meyrowitz. He stated he made a mistake and "I own up to it." [DE 97, pg. 18, lines 6-11]. Mr. Caplan offered to repay that money. [DE 97, pg. 18, lines 12-14].

a determination of an alleged ethical violation is best left to the Florida Bar, should Defendant or Defendant's counsel choose to file a Bar Complaint. Although Mr. Caplan has admitted that his disbursement to Plaintiff Scott Meyrowitz was improper, and although this Court has serious concerns about the timing and propriety of the disbursements to Mary Meyrowitz, the Court will not decide those ethical issues in this Order.

## V.     CONCLUSION

In light of the foregoing, it is **ORDERED** and **ADJUDGED** that Plaintiffs' Motion for Sanctions [DE 71] is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendant's Motion for Sanctions is **DENIED** without prejudice to seek other civil relief to the extent that Defendant seeks an award of sanctions in the amount of the lost value of the settlement funds, or any sanctions beyond an award of expenses, costs, and attorney's fees related to the Petition for Writ of Garnishment [DE 56] and the Motion for Sanctions [DE 71].

2. Defendant's Motion for Sanctions is **GRANTED** to the extent that Defendant seeks an award of expenses, costs, and attorney's fees against Lawrence A. Caplan, Esq., of Lawrence A. Caplan, P.A., and Plaintiffs Scott Meyrowitz, Mary Meyrowitz, and SSB International, LLC, related to litigating the Petition for Writ of Garnishment [DE 56] and the Motion for Sanctions [DE 71]. This award includes all reasonable attorney's fees, costs, and expenses incurred by Defendant and Defendant's counsel in filing and litigating the Petition for Writ of Garnishment [DE 56] and the Motion for Sanctions [DE 71], in preparing for and attending the hearings on these motions, and for Defendant's travel to and from Texas and Florida to attend the two evidentiary

hearings. Defendant shall file an appropriate affidavit with the Court on or before **April 30, 2018** documenting all attorney's fees, costs, and expenses incurred, including amount of attorney's fees sought, hours expended, services rendered, and hourly rate sought. Plaintiffs shall have until on or before **May 21, 2018** to file a response or objection to the hourly rate claimed by defense counsel and the number of hours incurred by counsel which relate to litigating the Petition for Writ of Garnishment and the Motion for Sanctions, and any other costs or expenses claimed. Thereafter, Defendant shall have until on or before **June 4, 2018** to file any reply to Plaintiffs' response. The Court will then enter a separate order determining the amount of attorney's fees, expenses, and costs which shall be paid by Plaintiffs and Mr. Caplan to Defendant Brendel.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of April, 2018.

WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE